# EXHIBIT "3"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NICHOLAS E. YOUNG <br> FCI Petersburg Low <br> P.O. Box 1000 <br> Petersburg, Virginia 23804 <br><br> Plaintiff, <br><br> v. <br><br> DEPARTMENT OF JUSTICE <br> 950 Pennsylvania Avenue, N.W. <br> Washington, D.C. 20530-0001 <br><br> Defendant. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * Civil Action No. 21-739 (DLF) <br> * <br> * <br> * <br> * <br> * <br> * |

\* \* \* \* \* \* \* \* \* \* \* \*

**FIRST AMENDED COMPLAINT**

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq., as amended, and the Privacy Act ("PA") of 1974, 5 U.S.C. § 552a, et seq., as amended, seeking expedited production of records responsive to a request submitted by the Plaintiff Nicholas E. Young, via his attorney of record, to two components of the Defendant Department of Justice ("DOJ").

**JURISDICTION**

1. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the Defendant pursuant to 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. § 552a(g)(1)(B), and 28 U.S.C. § 1331.

**VENUE**

2. Venue is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

**PARTIES**

3. Plaintiff Nicholas E. Young ("Young") is a U.S. citizen, and requested responsive records through his attorney of record.

4. Defendant DOJ is an agency within the meaning of 5 U.S.C. § 552(f) and 5 U.S.C. § 552a(a)(1), and is in possession and/or control of the requested records that are the subject of this action. DOJ controls – and consequently serves as the proper party defendant for litigation purposes for – the National Security Division ("NSD") and the Federal Bureau of Investigation ("FBI").

**FACTUAL BACKGROUND**

5. This lawsuit is brought by Young based on FOIA and PA requests submitted on his behalf by his attorney. It seeks production of records in the possession of DOJ (or its subordinate components) regarding surveillance applications and orders, as well as records pertaining to audio recordings made by an FBI Confidential Human Source ("CHS"), who targeted Young and led to his eventual criminal prosecution.

*Young Becomes A Target Of The FBI After Declining To Become An Informant*

6. Young, a Muslim convert when he was 25 year old, served as a dedicated law enforcement officer in Washington, D.C for the Washington Metropolitan Area Transit Authority for over a decade having joined the agency in 2003. But when the FBI entered his life, everything changed. New York Times, "*How an American Ended Up Accused of Aiding ISIS With Gift Cards,*" *January 28, 2017, https://www.nytimes.com/2017/01/28/us/politics/ washington-transit-cop-suspected-isis.html* (last accessed March 14, 2021).

7. In 2011, an FBI Agent offered Young an unsolicited opportunity: become an undercover informant for the Bureau and gather information at local mosques on fellow Muslims who might

2

pose a terrorism threat. The clandestine work was said to be "a lot sexier" than his current job and it could pay him a lot of money if the intelligence was helpful. Young flatly turned the Agent down.

8. Five years later, that same FBI Agent arrested Young. The U.S. District Court for the Eastern District of Virginia issued an arrest warrant for Young on August 2, 2016, for allegedly providing material support to the Islamic State of Iraq and al-Sham (otherwise known as "ISIS"), a designated Foreign Terrorist Organization ("FTO"). Young was the first – and thought to have been the only – law enforcement officer prosecuted out of more than one hundred Americans who allegedly sought to help ISIS. But, unlike the majority of those defendants, he was not accused of plotting violence or trying to travel to the Middle East to fight with terrorists. Young's crime: providing $245 in Google Play gift cards to a Muslim friend who in reality turned out to be an FBI CHS. He also associated, which is how he came to the attention of the FBI, years earlier with two other Muslims who were later prosecuted on terrorism charges. While comments Young made over the years were incendiary, provocative and some quite despicable, although none were tied to actionable conduct and never impacted his law enforcement position, his case raises serious questions regarding the FBI's aggressive targeting of American Muslim converts, and the shroud of secrecy under which it operates to do so. See e.g., Diala Shamas, *"Where's the Outrage When the FBI Targets Muslims?,"* The Nation, October 31, 2013, at *https://www.thenation.com/article/archive/wheres-outrage-when-fbi-targets-muslims/* (last accessed March 14, 2021); Sabrina Alimahomed-Wilson, "When the FBI Knocks: Racialized State Surveillance of Muslims," Critical Sociology, Vol. 45(6) 871–887 (2019), available at *https://csrr.rutgers.edu/wp-content/uploads/2020/01/when-the-fbi-knocks.pdf* (last accessed

3

March 14, 2021). This FOIA/PA lawsuit seeks to break through that secrecy in favor of transparency.

9. The investigation into Young's actions, including use of a CHS known as "Mo", existed for six years prior to his indictment. Young was said to have met on twenty separate occasions in 2014, with "Mo", who was posing as a disgruntled U.S. military reservist of Middle Eastern descent. The two continued to maintain communications over the next two years leading up to the time of Young's arrest. See United States v. Young, 260 F. Supp. 3d 530, 537 (E.D. Va. 2017).

10. To be clear, as a Muslim convert, Young held passionate views about the Middle East. Some of them actually aligned with the views of the U.S. Government. For example, he deplored the "slaughter" of Syrians by the government of President Bashar al-Assad. While on vacation leave from the Transit Authority, Young traveled to Libya in 2011 to join rebels fighting the Qaddafi regime, long viewed as an enemy of the U.S. government and the culprit responsible for the terrorist bombing of Pan Am 103 in 1988 that murdered one hundred eighty-nine Americans – the largest number until the horrific day of 9/11 – and two hundred twenty-seven innocent souls overall.

*Evidence Was Withheld From Young During His Prosecution*

11. On January 17, 2017, the U.S. Attorney's Office for the Eastern District of Virginia filed a Notice indicating that the government conducted electronic surveillance of Young, as well as a physical search of his property, pursuant to authorities provided by the Foreign Intelligence Surveillance Act ("FISA"). The Notice also indicated that the government intends to offer into evidence or otherwise use or disclose the fruits of its FISA surveillance of Young. In a sealed

ruling, the U.S. District Court Judge denied Young's Motion to Suppress the evidence gathered through FISA authorities. See Young, 260 F. Supp. 3d at 555 (noting existence of sealed ruling).

12. To date, and despite all the legal protections that are supposed to exist under the U.S. Constitution, the U.S. Government has never provided Young with access to any of the underlying FISA warrant applications, Foreign Intelligence Surveillance Court orders or related documentation, even in an unclassified format. The government has never produced evidence showing that Young, a law enforcement officer and U.S. citizen was, or associated with, an "agent of a foreign power," the core predicate for warrantless FISA surveillance.  50 U.S.C. §§ 1804 (a)(3)(A) & 1823(a)(3) & 1801(b)(2). In fact, the FBI's investigation of Young and apparent utilization of FISA came during a time when DOJ's Office of Inspector General conducted an audit of FBI FISA applications and determined that it does "not have confidence that the FBI has executed its Woods Procedures in compliance with FBI policy." *https://oig.justice.gov/sites/default/files/reports/a20047.pdf*.

13. A separate issue that arose in the criminal proceedings was the existence of various audio recordings made by the CHS "Mo" of his discussions with Young regarding, among other things, affinity for the FTO, actions to be taken in support of the FTO and the eventual purchase of the Google Play gift cards that served as the foundation for Young's arrest and prosecution. Young was entitled to all such recordings pursuant to Federal Rule of Criminal Procedure 16, as well as the Due Process Clause of the Fifth Amendment to the Constitution. On the eve of Young's trial, the U.S. Government made last-minute classified Jencks productions of communications among FBI agents regarding the number of audio recordings made of the discussions the CHS "Mo" had with Young. United States v. Young, 916 F.3d 368, 383 (4th Cir. 2019), cert. denied Young v. United States, 140 S.Ct. 113 (2019). Within the space of a few days, the number of occasions on

which CHS Mo "neglected" to wear a wire during his meetings with Young repeatedly evolved in the FBI agents' emails. First, "one or two" meetings were "not recorded." Then it was four "unrecorded" meetings. Then it was six. Obviously, these discrepancies raise significant questions about the integrity of DOJ/FBI's identification and production of responsive records.

14. Before trial, Young had asked the government whether the CHS "Mo" had made recordings of him that were destroyed or otherwise not produced. The government replied that Young was not entitled to know. The government's position was that the first recorded meeting between Young and the CHS "Mo" was from July 2014. That is also what the CHS "Mo"'s FBI agent handler testified at trial. The CHS "Mo", however, testified during trial he had at least six meetings with Young from May to June 2014, and he stated under oath that "all of them were recorded."

15. In fact, the government inadvertently produced to Young's defense team an audio CD labeled "May 2014." The CD's recorded conversation between Young and the CHS "Mo" tracked dialogue in a previously produced FBI memo "summarizing" a Young/Mo meeting—whose date the government redacted. The memo falsely represented that the May 2014 meeting was unrecorded. It contained other forms of false evidence: dialogue represented that Young made a comment supporting terrorism. But on the recording, Young questions whether it is appropriate for jihadists to challenge a country's legitimate government.

16. Multiple pieces of trial evidence intimated that additional audio recordings, believed to be as many as six in number from May and June 2014, with the CHS "Mo" containing potentially exculpatory information existed but were never produced during his criminal prosecution. Or, alternatively, that these potentially exculpatory recordings were destroyed by the CHS or a government official, a fact not revealed to Young, and documents exist that would

6

demonstrate this to be the case. To date, the government has never denied that these unproduced or possibly destroyed audio recordings actually exist(ed), even though Young has made the claim in court many times.

17. Young was convicted by a jury in 2017 on one count of attempting to provide material support to a designated FTO and two charges of obstruction of justice. Washington Post, Former D.C. area police officer found guilty of trying to back Islamic State, December 18, 2017, *https://www.washingtonpost.com/local/public-safety/former-dc-area-police-officer-found-guilty-of-attempting-to-back-islamic-state/2017/12/18/0bbca6b2-e40c-11e7-833f-155031558ff4_story.html* (last accessed March 14, 2021). In 2018, he was sentenced to fifteen years in prison. See *https://www.justice.gov/opa/pr/former-police-officer-sentenced-attempting-support-isis*. The two obstruction charges were later thrown out by the Fourth Circuit. Washington Post, "Two ISIS-related convictions against former D.C. Metro police officer vacated," February 22, 2019, *https://fredericksburg.com/news/crime_courts/two-isis-related-convictions-against-former-d-c-metro-police-officer-vacated/article_9c408c7a-36b4-11e9-ae77-fbb9c839c902.html* (last viewed March 14, 2021). Upon resentencing, Young was again given fifteen years. See United States v. Young, 818 Fed. Appx. 185, 188 (4th Cir. 2020), re'hrg denied United States v. Young, 2020 U.S. App. LEXIS 21865 (4th Cir., July 14, 2020).

18. The FOIA/PA requests underlying this litigation seek the disclosure of the records that were withheld from Young during his criminal prosecution. Those records include not only the relevant FISA documentation upon which the U.S. Government was permitted to conduct extensive electronic and physical surveillance of Young, but records pertaining to the existence of audio recordings that Young maintains do, in fact, exist and contain relevant and material, exculpatory information that was never produced at trial, or a record of their destruction.

**COUNT ONE (DOJ/NSD)**

19. Young repeats and realleges paragraphs 5 through 18 above, inclusive.

20. By letter dated January 3, 2020, Young, through his attorney, submitted a FOIA/PA Act request to DOJ's National Security Division ("NSD") and to the FBI. The request, which also sought expedited processing, was accompanied by a properly executed Privacy Act Authorization from Young.

21. The request sought the following records:

    1. A copy of all FISA applications seeking surveillance of Nicholas Young, as referenced in the government's aforementioned public FISA notice, including any related certifications, exhibits, and annexes.

    2. Any order or other approval from the Foreign Intelligence Surveillance Court (FISC) regarding those FISA applications.

    3. A copy of any and all applications for renewal of the surveillance authority granted in the aforementioned order or other approval from the FISC, including any related certifications, exhibits and annexes.

    4. Any and all orders or approvals from the FISC regarding requests for renewal of the surveillance authority concerning Nicholas Young.

    5. If Mr. Young was not the "target" of the FISA application(s), documents or records sufficient to show the purported probable cause used to "establish" that (i) each facility or place at which Mr. Young's electronic surveillance was directed was being used, or was about to be used, by a foreign power or an agent of a foreign power and (ii) that Mr. Young's premises, subject to FISA physical search, was or was about to be owned, used, possessed by, or was in transit to or from the "target" of the FISA application.

    6. Documents, records, and communications concerning (i) the number of consensual audio recordings of Mr. Young made by CHS "Mo," (ii) whether any of those recordings were destroyed, misplaced, lost, or otherwise withheld from production to Mr. Young, (iii) any "validation reports" or CHS file concerning "Mo," (iv) whether any information was withheld from, or not placed in, the validation report for "Mo."

22. DOJ NSD denied the FOIA/PA Act request in full, stating that it was refusing to confirm or deny the existence or non-existence of responsive records. DOJ NSD indicated that

8

the existence or non-existence of responsive records is a classified fact. DOJ NSD designated the FOIA/Privacy Act request as Request No. 20-142.

23. Young, through his attorney, submitted a timely appeal for DOJ NSD's denial. The appeal was designated as Appeal No. DOJ-AP-2020-001881.

24. By letter dated April 24, 2020, DOJ's Office of Information and Policy ("OIP") reversed in part and affirmed in part DOJ NSD's denial. DOJ OIP affirmed DOJ NSD's refusal to confirm or deny the existence or non-existence of records responsive to the first five categories of information sought in Young's FOIA/PA Act request. DOJ OIP, however, remanded back to DOJ NSD line item #6 from Young's FOIA/PA regarding records concerning discussions with "Mo".

25. By letter dated June 11, 2021, DOJ NSD responded that it did not locate any responsive records concerning line item #6.

26. Young has exhausted all required administrative remedies with respect his FOIA/PA request.

27. Young is entitled to receipt of non-exempt copies of all records responsive to his FOIA/PA request.

**COUNT TWO (DOJ/FBI)**

28. Young repeats and realleges paragraphs 5 through 18 above, inclusive.

29. By letter dated January 3, 2020, Young, through his attorney, submitted a FOIA/PA request to the FBI. The request was accompanied by a properly executed Privacy Act Authorization from Young.

9

30. By letter dated January 15, 2020, the FBI assigned Young's request No. 1456657-000, and assigned him to the "all other" fee category. Young's counsel at the time has no record of ever receiving this document.

31. By letter dated March 5, 2020, the FBI denied Young's request in its entirety on the basis of FOIA Exemption (b)(7)(A) and administratively closed the request. No other FOIA/PA exemptions were cited. Young's counsel at the time has no record of ever receiving this document.

32. By letter dated April 28, 2021, Young, by and through his undersigned counsel, submitted a FOIA/PA request to the FBI via its online portal. The request, which sought expedited processing, was accompanied by a properly executed Privacy Act Authorization from Young.

33. The request sought the following records:

1. All Foreign Intelligence Surveillance Act ("FISA") applications seeking surveillance of Mr. Young, as referenced in the government's public FISA notice filed January 17, 2017, in United States of America v. Young, Case No. 16-cr-00265 (E.D.V.A), including any related certifications, exhibits, and annexes;

2. Any order or other approval from the Foreign Intelligence Surveillance Court ("FISC") regarding those FISA applications;

3. A copy of any and all applications for renewal of the surveillance authority granted in the aforementioned order or other approval from the FISC, including any related certifications, exhibits and annexes;

4. Any and all orders or approvals from the FISC regarding requests for renewal of the surveillance authority concerning Mr. Young;

5. Discussion and demonstration of the purported probable cause used to "establish" that (i) each facility or place at which Mr. Young's electronic surveillance was directed was being used, or was about to be used, by a foreign power or an agent of a foreign power and (ii) that Mr. Young's premises, subject to FISA physical search, was or was about to be owned, used, possessed by, or was in transit to or from the "target" of the FISA application;

6. Anything that reveals (i) the number of consensual audio recordings of Mr. Young made by CHS "Mo," (ii) whether any of those recordings were destroyed, misplaced, lost, or otherwise withheld from production to Mr. Young, (iii) any "validation reports" or CHS file concerning "Mo,"; and (iv) whether any information was withheld from, or not placed in, the validation report for "Mo";

7. A meeting/interview of Fredric Wehrey of the Carnegie Endowment by FBI Special Agents in or around 2016; and,

8. All records relating in any way to Nicholas Eric Young (DOB: 12/3/79). This includes all serials for the HQ case file and all subfiles, and all serials for Mr. Young's specific case file and subfiles. I have enclosed an executed Authorization and Privacy Waiver form from Mr. Young as Exhibit "1".

34. It was also noted in the request that it "relates to and incorporates by reference those records that were previously deemed responsive to FOIPA No: 1456657-000."

35. By letter dated May 6, 2021, the FBI assigned Young's request No. 1495706-000, and assigned him to the "all other" fee category.

36. By separate letter dated May 6, 2021, the FBI denied Young's request for expedited processing. By law, no exhaustion of administrative remedies is required of Young.

37. No further responses from the FBI have been received.

38. Young has constructively exhausted all required administrative remedies with respect to his FOIA/PA request.

39. Young is entitled to receipt of non-exempt copies of all records responsive to his FOIA/PA request.

**COUNT THREE (DOJ/NSD/FBI)**

40. Young repeats and realleges paragraphs 5 through 18 above, inclusive.

41. By letter dated January 3, 2020, Young, through his attorney, submitted a FOIA/PA request to NSD and FBI and requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E)(1) and 28 C.F.R. § 16.5(e)(1) (iii), (iv), particularly given that any delay in the

11

production of responsive materials would result in the "loss of substantial due process rights." § 16.5(e)(1)(iii). Specifically, the existence of these materials and their content would amount to materials the government was required to produce before Young's trial pursuant to due process rights established in <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and its progeny. Accordingly, Young requires the information in seeking post-conviction relief for which he has a statutory deadline.

    42. By letter dated January 24, 2020, the FBI denied Young's request for expedited processing. Young's counsel at the time has no record of ever receiving this document. By law, no exhaustion of administrative remedies is required of Young.

    44. By letter dated February 6, 2020, DOJ OIP upheld the denial of expedited processing by NSD. By e-mail dated February 27, 2020, Young, through his attorney, renewed his appeal of this decision. By letter dated March 4, 2020, OIP again affirmed the denial.

    45. No further exhaustion of administrative remedies is required as a matter of law.

> **Deleted:** 36. By letter dated February 6, 2020, DOJ OIP denied Young's request for expedited processing....
>
> **Deleted:** 37

WHEREFORE, Plaintiff Nicholas E. Young prays that this Court:

    (1) Orders the Defendant to disclose non-exempt copies of the requested records in their entirety and make copies promptly available to the Plaintiff;

    (2) Award reasonable costs and attorney's fees as provided in 5 U.S.C. § 552 (a)(4)(E), 5 U.S.C. § 552a(g)(3)B), and/or 28 U.S.C. § 2412 (d);

    (3) expedite this action in every way pursuant to 5 U.S.C. § 552(a)(6)(E)(1), 28 C.F.R. § 16.5(e)(1) (iii), (iv) and 28 U.S.C. § 1657 (a); and,

    (4) grant such other relief as the Court may deem just and proper.

Date:  July 9, 2021

                Respectfully submitted,

                   /s/ *Mark S. Zaid*
                _____
                Mark S. Zaid, Esq.
                D.C. Bar #440532
                Bradley P. Moss, Esq.
                D.C. Bar #975905
                Mark S. Zaid, P.C.
                1250 Connecticut Avenue, N.W.
                Suite 700
                Washington, D.C. 20036
                (202) 454-2809
                (202) 330-5610 fax
                Brad@MarkZaid.com
                Mark@MarkZaid.com

                Attorneys for the Plaintiff

**Deleted:** March 20