UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NICHOLAS E. YOUNG,

                Plaintiff,

    v.

DEPARTMENT OF JUSTICE,

                Defendant.

Civil Action No. 21-739 (DLF)

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Department of Justice and its component agency, the Federal Bureau of Investigation ("FBI"), by and through undersigned counsel, moves for summary judgment in this action, which arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. In support, Defendant relies on the accompanying Memorandum of Law, Statement of Material Facts as to Which There Is No Genuine Dispute, and Declaration of Michael G. Seidel.

Dated: June 15, 2022        Respectfully submitted,

                        MATTHEW M. GRAVES, D.C. Bar No. 481052
                        United States Attorney

                        BRIAN P. HUDAK
                        Chief, Civil Division

                        */s/ Sean Tepe*
                        SEAN M. TEPE, D.C. Bar #1001323
                        Assistant United States Attorney
                        601 D Street, NW
                        Washington, DC 20530
                        202-252-2533

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NICHOLAS E. YOUNG,

             Plaintiff,

    v.

DEPARTMENT OF JUSTICE,

             Defendant.

Civil Action No. 21-739 (DLF)

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

This action pertains to a request submitted to the Federal Bureau of Investigation ("FBI") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking records pertaining to the FBI's investigatory activities prior to Plaintiff's prosecution and conviction for providing material support to the Islamic State of Iraq and al-Sham ("ISIS") and obstruction of justice.

As demonstrated below, the FBI properly declines to confirm or deny the existence of records of a meeting or interview that FBI Special Agents may or may not have had with a third party, pursuant to FOIA Exemptions 6 and 7(C). The FBI also appropriately relies on FOIA Exemptions 1, 3, 6, 7(C), 7(D), and 7(E) to categorically protect records relating to a confidential human source. Because the FBI has satisfied its obligations under the FOIA, the FBI respectfully requests that the Court grant its Motion for Summary Judgment.[1]

### FACTUAL BACKGROUND

On December 18, 2017, a federal jury convicted Nicholas Young of attempting to provide material support to the Islamic State of Iraq and al-Sham (ISIS) and obstruction of justice. *See*

---

[1]     The FBI understands that Plaintiff is not challenging the adequacy of the FBI's search for records, only the FBI's exemption claims.

*United States v. Nicholas Young*, No. 16-cr-265 (E.D. Va.), ECF No. 196.   Mr. Young was subsequently sentenced to 15 years in federal prison.  *Id*., ECF No. 224.

On January 3, 2020, Plaintiff, through counsel, submitted a six-part FOIA request to the FBI seeking records relating to activities before the Foreign Intelligence Surveillance Court ("FISC") and documents, records, and communications relating to a confidential human source ("CHS") "Mo."  Seidel Decl. ¶ 6, Ex. A.  On March 5, 2020, the FBI responded to the FOIA request, which was assigned as Request No. 1456657-000.  *Id*. ¶ 9, Ex. D.  The FBI informed Plaintiff that the requested material was exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A), which exempts from disclosure "records or information compiled for law enforcement purposes" to the extent the records "could reasonably be expected to interfere with enforcement proceedings."  *Id*.

On March 20, 2021, Plaintiff filed his initial Complaint.  *See* ECF No. 1.  However, upon learning that Plaintiff had not properly exhausted his administrative remedies, Plaintiff submitted a new FOIA and Privacy Act request on April 28, 2021.  *Id*. ¶ 11, Ex. E.  This new FOIA/PA request, which was assigned Request No. 1495706-000, sought the same records but also made two additional requests.  *Id*., Ex. F.  After Plaintiff satisfied the exhaustion requirements for this new FOIA/PA request, Plaintiff amended his Complaint on July 12, 2021.  During the litigation, the FBI responded to all portions of the FOIA/PA request (except for part 8, which Plaintiff withdrew), and the parties have since narrowed the issues in dispute to the FBI's invocation of exemptions in responses to parts 6 and 7 of the revised FOIA request (*see* Joint Status Report, ECF No. 21), which seeks:

> 6. Anything that reveals (i) the number of consensual audio recordings of Mr. Young made by CHS "Mo," (ii) whether any of those recordings were destroyed, misplaced, lost, or otherwise withheld from production to Mr. Young, (iii) any "validation reports" or CHS file concerning "Mo,"; and (iv) whether any information was withheld from, or not placed in, the validation report for "Mo";

   7. A meeting/interview of Frederic Wehrey of the Carnegie Endowment by FBI Special Agents in or around 2016.

By letter dated November 2, 2021, the FBI informed Plaintiff that, per FOIA Exemptions 6 and 7(C), it could neither confirm nor deny the existence of records responsive to item number 7 (records regarding Frederic Wehrey). Seidel Decl. ¶ 19, Ex. L. By letter dated December 3, 2021, the FBI informed Plaintiff that records responsive to item number 6 (records regarding CHS "Mo") are categorically denied pursuant to FOIA Exemptions 6, 7(C), and 7(D). *Id.* ¶ 20, Ex. M.

## LEGAL STANDARDS

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Judicial Watch, Inc. v. HUD*, 20 F. Supp. 3d 247, 253 (D.D.C. 2014) (citation omitted); *see also Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011) ("[T]he vast majority of FOIA cases can be resolved on summary judgment."). A court reviews an agency's response to a FOIA request *de novo*. 5 U.S.C. § 552(a)(4)(B). "The defendant in a FOIA case must show that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Light v. DOJ*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013).

Even though under FOIA "the burden is on the agency to sustain its action," 5 U.S.C. § 552(a)(4)(B), "in conducting *de novo* review in the context of national security concerns, courts must accord *substantial weight* to an agency's affidavit." *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007) (internal quotation marks and citation omitted; emphasis in original); *see also Krikorian v. Dep't of State*, 984 F.2d 461, 464 (D.C. Cir.1993) (noting deference to expertise of agencies engaged in national security and foreign policy). As the D.C. Circuit has recognized:

> [S]ummary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith. Moreover, a reviewing court must take into account that any affidavit or other agency statement of threatened harm to national security will always be speculative to some

3

extent, in the sense that it describes a potential future harm. Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible.

*Wolf*, 473 F.3d at 374 (internal quotation marks, citations, and alterations omitted).

## ARGUMENT

## I.     The FBI Properly Issued A *Glomar* Response to A Third-Party Records Request

In response to Plaintiff's request in Part 7 for records regarding a "meeting/interview of Frederic Wehrey of the Carnegie Endowment by FBI Special Agents in or around 2016[,]" the FBI properly has responded that, pursuant to Exemptions 6 and 7(C), it could neither confirm nor deny the existence of such records.  Seidel Decl. ¶ 19, Ex. L.

### A.     Exemption 7 Threshold

FOIA Exemption 7 protects from mandatory disclosure "records or information compiled for law enforcement purposes," to the extent that disclosure could result in one of the six harms enumerated in subparts (A) through (F) of the exemption.  *See* 5 U.S.C. § 552(b)(7).  As such, judicial review of an agency's withholding under FOIA Exemption (b)(7) "requires a two-part inquiry."  *FBI v. Abramson*, 456 U.S. 615, 622 (1982).  First, the relevant information must have been "compiled for law enforcement purposes."  *Id*.  A record is compiled for law enforcement purposes if: (1) the activity that gives rise to the documents is related to the enforcement of federal laws or the maintenance of national security; and (2) the nexus between the activity and one of the agency's law enforcement duties is based on information sufficient to support at least a "colorable claim" of its rationality.  *See Keys v. Dep't of Just*., 830 F.2d 337, 340 (D.C. Cir. 1987); *Pratt v. Webster*, 673 F.2d 408, 420-21 (D.C. Cir. 1982); *Blanton v. Dep't of Just*., 63 F. Supp. 2d 35, 44 (D.D.C. 1999).  Courts assume that "criminal law enforcement agency" records were for law enforcement purposes because government agencies "typically go about their intended business," and courts apply a "more deferential attitude toward [their] claims of 'law enforcement purpose.'"  *Pratt*, 673 F.2d at 418-19.  The FBI is such an agency, and the records at issue, if they exist for

4

Part 7, would have been compiled as part of "the FBI's investigation of Mr. Young's dealings with an international terrorist organization."  Seidel Decl. ¶ 29.

### B.    *Glomar* Response and Exemption 7(C)

Generally, when an agency receives a FOIA request, it must conduct a reasonable search for responsive agency records, acknowledge the existence or nonexistence of any responsive records found in the search, produce the non-exempt portions of any responsive records, and provide an explanation of why any responsive records were withheld under applicable FOIA exemptions.  *See ACLU v. CIA*, 710 F.3d 422, 426 (D.C. Cir. 2013).  In certain circumstances, however, confirming or denying whether the agency has any responsive records may itself disclose matters that are protected from public disclosure under an applicable FOIA exemption.  In those circumstances, an agency may properly refuse to confirm or deny whether it has any records responsive to the FOIA request.  *Id*.  Neither confirming nor denying the existence of responsive records is referred to as a "*Glomar*" response, after a seminal case in which the CIA neither confirmed nor denied whether it had records about a ship called the "*Glomar Explorer*."  *See Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976).  Where the harm justifying a *Glomar* response would attach only if the agency were to confirm the existence of responsive records, the agency may nonetheless issue a *Glomar* response whether or not it possesses such records.  ''The agency must be permitted to issue a *Glomar* response in both situations to maintain the uncertainty essential to *Glomar*'s efficacy."  *People for the Ethical Treatment of Animals ("PETA") v. Nat'l Insts. of Health*, 745 F.3d 535, 540 (D.C. Cir. 2014).

Exemption 7(C) applies to records or information compiled for law enforcement "that could be reasonably expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Under Exemption 7(C), "a Glomar response may be issued in place of a statement acknowledging the existence of responsive records but withholding them, if confirming or denying

the existence of the records would associate the individual named in the request with criminal activity." *Donato v. Exec. Office for U.S. Attorneys*, 308 F. Supp. 3d 294, 310 (D.D.C. 2018). This is because the "mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990) (citation omitted). "There can be no clearer example of an unwarranted invasion of personal privacy than to release to the public that another individual was the subject of a law enforcement investigation." *PETA*, 745 F.3d at 542 (cleaned up). It is settled that Exemption 7(C) protects the privacy interests of all persons mentioned in law enforcement records, whether they be investigators, suspects, witnesses, or informants. *See Schrecker v. Dep't of Just.*, 349 F.3d 657, 661 (D.C. Cir. 2003).

In evaluating the assertion of Exemption 7(C), the court must "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Davis v. Dep't of Just.*, 968 F.2d 1276, 1281 (D.C. Cir. 1992). The D.C. Circuit has held that "unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1202 (D.C. Cir. 1991).

Here, the FBI conducted the requisite balancing. On the privacy side of the analysis, Plaintiff has not supplied a privacy waiver from Mr. Wehrey or proof of his death. It is standard FBI policy to issue a *Glomar* response when a request seeks records pertaining to a third party in the absence of such documentation. Seidel Decl. ¶ 33. Mr. Wehrey would have the substantial privacy interest that, as discussed above, courts recognize exists with respect to the identity of a person appearing in intelligence or law enforcement records. *Id.* On the public interest side of the analysis, Plaintiff has not established to date a public interest in the requested Wehrey records,

6

assuming such records exit. *Id.* ¶ 35. Accordingly, there is no public interest that outweighs the well-established privacy interests of the third party. Further, disclosing whether the FBI possesses the requested Wehrey records leads to the very association with FBI activities that Exemption 7(C) protects against. *Roth v. Dep't of Just.*, 642 F.3d 1161, 1178 (D.C. Cir. 2011) ("Since merely acknowledging that the FBI has information regarding [various third parties] would tend to associate them with criminal activity, thus impinging on their privacy, the FBI's *Glomar* response, absent a countervailing public interest in disclosure, was appropriate under Exemption 7(C)."). Therefore, the *Glomar* invocation was appropriate. *See, e.g., Jurdi v. United States*, 485 F. Supp. 3d 83, 98 (D.D.C. 2020) ("[A]t least in the absence of a countervailing public interest, the FBI's refusal to confirm or deny the existence of records is justified" under Exemption 7(C)); *Eddington v. Dep't of Just.*, Civ. A. No. 19-1991 (FYP), 2022 WL 218562 (D.D.C. Jan. 25, 2022) (concluding that Counterterrorism Section's *Glomar* response pursuant to Exemption 7(C) was appropriate in responding to request for records of third party).

### C.    <u>Exemption 6</u>

Courts also find that "third-party identifying information" may be protected under Exemption 6, which permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); *see, e.g., Kowal v. Dep't of Just.*, 490 F. Supp. 3d 53, 69-71 (D.D.C. 2020). The term "similar files" is broadly construed and includes "Government records on an individual which can be identified as applying to that individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual."); *Gov't Accountability Project v. Dep't of State*, 699 F. Supp. 2d 97, 105-06 (D.D.C. 2010). In assessing the applicability of Exemption 6, courts weigh the "privacy interest

in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 46; *Chang v. Dep't of Navy*, 314 F. Supp. 2d 35, 43 (D.D.C. 2004). "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 47 (quoting *Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994)) (alterations in original); *Beck v. DOJ*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) (quoting *Dep't of Just. v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)). "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose." *Beck*, 997 F.2d at 1492. The FBI undertook the same balancing analysis under Exemption 6 that it had when applying Exemption 7(C), and appropriately reached the same conclusion that there was no apparent public interest that outweighed the privacy interest of the third-party, assuming that such records exist. *See* Seidel Decl. ¶¶ 32-37.

## II.     The FBI Properly Withheld Confidential Source-Related Records

In Part 6 of his Request, Plaintiff requests records relating to a confidential human source called "Mo," including records that reveal "the number of consensual audio recordings of Mr. Young made by CHS 'Mo'"" and "any 'validation reports' or CHS file concerning 'Mo'." Seidel Decl. ¶ 3. Such records are exempt from disclosure pursuant to multiple FOIA exemptions.

### A.     <u>Exemption 7(D)</u>

Part 6 of Plaintiff's request falls directly under the scope of Exemption 7(D), which prevents disclosure of records "compiled by criminal law enforcement authorit[ies] in the course of a criminal investigation" if producing the records "could reasonably be expected to disclose the identity of a confidential source" or "information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). In the words of the D.C. Circuit, "[i]f the FBI's production of criminal

8

investigative records 'could reasonably be expected to disclose the identity of a confidential source' or 'information furnished by' such a source, that ends the matter, and the FBI is entitled to withhold the records under Exemption 7(D)." *Roth*, 642 F.3d at 1184-85. "Unlike Exemptions 6 and 7(C), Exemption 7(D) requires no balancing of public and private interests." *Id*. If a record falls within Exemption 7(D), "that ends the matter." *Id*.; *see also Billington v. Dep't of Just*., 301 F. Supp. 2d 15, 22 (D.D.C. 2004) ("Exemption 7(D) has long been recognized as affording the most comprehensive protection of all FOIA's law enforcement exemptions.").

Given the nature of Plaintiff's request, there should be no dispute that the requested records relating to "Mo" were compiled by the FBI during its criminal investigation of Young and would disclose the identity of and information furnished by a confidential source. Nonetheless, the FBI confirms that responsive records were compiled in the FBI's investigation of Young and those include internal and CHS reporting forms, among other investigative documents. Seidel Decl. ¶ 59. The FBI also confirms that "Mo" provided information as a "confidential" source because "Mo" had an "explicit confidentiality" assurance from the FBI, as reflected by the fact that "Mo" had a "source number . . . to ensure the identity is not disclosed." *Id*. ¶ 56.

There is no question that disclosure of records responsive to Part 6, which explicitly seeks materials regarding CHS "Mo," would reveal the identity of that source and information furnished by that confidential source, and thus responsive records are covered by Exemption 7(D). *See Schoenman v. FBI*, 763 F. Supp. 2d 173, 200 (D.D.C. 2011) (upholding invocation of Exemption 7(D) where FBI "explain[ed], in a reasonably detailed and non-conclusory manner, that the information at issue in each instance was received in connection with an express grant of confidentiality"); *Skinner v. Dep't of Just*., 744 F. Supp. 2d 185, 212 (D.D.C. 2010) (upholding use of Exemption 7(D) to withhold "information provided by or that would identify confidential

sources" when agencies' "declarants establish that their agencies' respective cooperating witnesses and informants provided information under an express assurance of confidentiality").

The FBI has located and reviewed records responsive to Part 6 and has withheld the following categories of documents to the extent that they contain information that directly or indirectly identifies the confidential human source or discloses information furnished by the source: CHS reporting documents, interview forms (FD-302s), FBI electronic communications ("ECs"), and other administrative investigation documents. Seidel Decl. ¶ 59. It is appropriate to categorically exempt responsive records because "[p]roviding a document-by-document description or listing" of the records "would undermine the confidentiality that the FBI seeks to protect under Exemption 7(D)." *Id.*; *see Albuquerque Pub. Co. v. Dep't of Just.*, 726 F. Supp. 851, 857 (D.D.C. 1989) (concluding "entire document" could be withheld under Exemption 7(D)).

## B.   <u>Exemption 1</u>

Certain records responsive to Part 6 are classified and exempt from disclosure by Exemption 1 of FOIA, which protects matters that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1)(A). Executive Order 13526 prescribes requirements for the classification of national security information. *See* Executive Order No. 13526, 75 Fed. Reg. 707 (Jan. 5, 2010). Those requirements are : (1) an original classification authority classifies the information; (2) the United States Government owns, produces, or controls the information; (3) the information falls within one or more of eight protected categories listed in section 1.4 of the Executive Order; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in a specified level of damage to the national security, and the original classification authority is able to identify or describe the damage. E.O. 13526 § 1.1(a).

Michael G. Seidel is an original classification authority, and in that role he has confirmed that the relevant record information is controlled by the U.S. Government, falls within certain protected categories under the Executive Order, and continues to warrant classification at the Secret level. Seidel Decl. ¶ 65. The Seidel Declaration is afforded substantial deference in this determination. *See Ctr. for Nat'l Sec. Studies v. Dep't of Just.*, 331 F.3d 918, 927 (D.C. Cir. 2003) (courts accord "substantial weight to an agency's affidavit concerning . . . classified status"). Based on his review of records withheld under Exemption 1, Seidel determined that these responsive records are exempt pursuant to E.O. 13526 § 1.4(c), which covers intelligence sources and methods. Seidel Decl. ¶¶ 66-69. As explained in more detail in the Seidel Declaration, the records being withheld here cover intelligence activities utilized by the FBI in its investigation of Mr. Young, information obtained from a human intelligence source, as well as classified file numbers and source symbol numbers associated with those activities and sources. *Id.* ¶¶ 69-79.

Further, the disclosure of the classified information reasonably could be expected to damage national security, a conclusion that is subject to deference. *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927 ("[I]n the FOIA context, we have consistently deferred to executive affidavits predicting harm to national security, and have found it unwise to undertake searching judicial review."). For example, the disclosure of the FBI's intelligence activity reasonably could be expected to "reveal the actual activity or method utilized by the FBI against a specific target," thereby disclosing the intelligence-gathering capabilities of that activity or method. Seidel Decl. ¶ 70. And the disclosure of human source information reasonably could be expected to cause current sources to cease providing information and discourage potential sources from cooperating with the FBI. *Id.* ¶¶ 75-76; *see Miller v. Dep't of Just.*, 562 F. Supp. 2d 82, 105 (D.D.C. 2008) ("[P]ublicly identifying sources utilized in intelligence investigations" would negatively impact "the FBI's ability to protect and recruit intelligence sources in the future."). Even disclosure of

11

the file numbers and source symbol number reasonably could be expected to harm national security. The file numbers contain information that reflect geographic region, type of investigation, and a chronology of events that, in concert with other information, could expose the nature of the intelligence activity. *Id*. ¶ 71. The source symbol numbers serve as a singular identifier in lieu of the source's true identity, and the release of that number could be used, again in concert with other available information, to identify the source. *Id*. ¶ 79. In sum, the Seidel Declaration "depict(s) with reasonably specific detail the nature of documents at issue and the harm that could be expected to occur" from disclosure. *See Baez v. Dep't of Just*., 647 F.2d 1328, 1336 (D.C. Cir. 1980) (holding summary judgment for government warranted on Exemption 1); *Shapiro v. Dep't of Just*., Civ. A. No. 12-313 (BAH), 2020 WL 3615511, at *21 (D.D.C. July 2, 2020) (concluding that FBI "carried its 'light' burden" in justifying withholding of records relating to intelligence activities and methods under Exemption 1). The FBI has satisfied its burden to justify the invocation of Exemption 1.

### C.   <u>Exemption 3</u>

Exemption 3 provides an independent basis for protection of certain of the records responsive to Part 6. Exemption 3 protects information that is "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). To justify withholding under Exemption 3, a statute must either (i) require that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (ii) establish particular criteria for withholding or refer to particular types of matters to be withheld. *Id.*

The FBI is relying on Section 102A of the National Security Act of 1947 ("the National Security Act"), which mandates that the Director of National Intelligence ("DNI") "shall protect intelligence sources and methods from unauthorized disclosure." Seidel Decl. ¶ 81; 50 U.S.C. § 3024(i)(1). Thus, National Security Act § 102A leaves the FBI, as a member of the intelligence

community, with no discretion—intelligence sources and methods must be protected.  The National Security Act has long been recognized as a withholding statute properly invoked under FOIA Exemption 3.  *See, e.g.*, *ACLU v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011).  Further, the statute requires protection of both classified and unclassified sources and methods.  *CIA v. Sims*, 471 U.S. 159, 176 (1985).

The FBI is relying on Exemption 3 to protect "sources and methods of gathering intelligence" that were employed in the Young counterterrorism investigation.  Seidel Decl. ¶ 83.  The withheld information regarding a confidential human source is covered by Section 102A of the National Security Act and therefore is exempt.  *See Looks Filmproduktionen GmbH v. CIA*, 199 F. Supp. 3d 153 (D.D.C. 2016) (Exemption 3 appropriate where "declaration makes plain that redacted information includes materials that could reveal the identities of the described 'human sources'").

### D.  Exemptions 6 and 7(C)

The FBI also withheld information that would identify third parties under FOIA Exemptions 6 and 7(C).  Seidel Decl. ¶¶ 85-94.  The analysis is the same as that discussed above, *see supra*.  Thus, the central question for the records requested in Part 6 of the request concerns the FBI's balancing of privacy interests against any public interest in disclosure.  The FBI has performed this analysis in each instance in which information was withheld under these exemptions.  Seidel Decl. ¶¶ 88-94.

1.  FBI Special Agents.  Within the records responsive to Part 6, the FBI withheld the names and other identifying information of FBI Special Agents involved in the Young investigation.  Seidel Decl. ¶ 88.  These Special Agents, who generally do not get to pick their assignments, may be subject to unwanted questioning or scrutiny, hostility, or retaliation from those sympathetic to Young.  *Id*. ¶ 89.  Publicity may prejudice a Special Agent's ability to

effectively conduct other investigations now or in the future. *Id.* The identities of these Special Agents would not themselves significantly increase the public's understanding of the FBI's work, and therefore the FBI concluded that there was no public interest sufficient to override their privacy interests. *Id.*; *see also Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1491 (D.C. Cir. 1984) (upholding decision to withhold names of FBI agents because the agents had a "legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives"); *Lesar v. Dep't of Just.*, 636 F.2d 472, 487 (D.C. Cir. 1980) (upholding decision to withhold names of FBI personnel involved in investigation where "public identification of these individuals conceivably could subject them to annoyance or harassment").

2.   <u>Third parties mentioned in records</u>.   The FBI also withheld the names of third parties tangentially mentioned in responsive records.   Seidel Decl. ¶ 90.   These individuals with no substantive role in the investigation maintain a substantial privacy interest in not being connected with FBI investigations, which can carry a negative connotation and create potential suspicion.   The FBI concluded that disclosure of their identities would not increase the public's understanding of the FBI's work and certainly would not outweigh these third party individuals' substantial privacy interests.   *Id.*; *see Sandoval v. Dep't of Just.*, 296 F. Supp. 3d 1, 18-19 (D.D.C. 2017); *Amuso v. Dep't of Just.*, 600 F. Supp. 2d 78, 95-97 (D.D.C. 2009).

3.   <u>Third parties of investigative interest</u>.   The FBI withheld the names of third parties who were of investigative interest to the Bureau. *Id.* ¶ 91.   Interactions with the confidential human source included information regarding other individuals, not just Young. *Id.*   Being identified as a subject of FBI investigative interest carries a "strong negative connotation" and could result in "harassment or embarrassment" and "professional and social repercussions." *Id.*   The identities of these third persons would not increase the understanding of the FBI's work, and therefore the FBI

concluded that there was no public interest sufficient to override these individuals' substantial privacy interests. *Id.*; *see Sandoval*, 296 F. Supp. 3d at 18-19; *Amuso*, 600 F. Supp. 2d 78, 95-97.

4.   <u>Third parties who provided information to the FBI</u>.  The FBI withheld names and other identifying information of third parties who were interviewed or provided information by other means during the FBI's investigation.  Seidel Decl. ¶ 92.  These individuals could be subject to harassment, unwanted attention and inquiries, retaliation, professional and social repercussions, and perhaps even physical harm after disclosure of their cooperation or assistance.  *Id*. ¶ 93.  The identities of these third persons would not increase the understanding of the FBI's work, and therefore the FBI concluded that there was no public interest sufficient to override these individuals' substantial privacy interests.  *Id*. ¶ 94; *see Sandoval*, 296 F. Supp. 3d at 18-19; *Amuso*, 600 F. Supp. 2d at 95-97.

**E.   <u>Exemption 7(E)</u>**

Within the records responsive to Part 6 of the request is information that is protected from disclosure by Exemption 7(E).  This exemption protects from disclosure information in law enforcement records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  "Exemption 7(E)'s requirement that disclosure risk circumvention of the law 'sets a relatively low bar for the agency to justify withholding.'"  *Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary and Water Comm'n*, 740 F.3d 195, 204-05 (D.C. Cir. 2014) (quoting *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C.Cir.2011)).

Again, as discussed above, the informant records requested in Part 6 were compiled for intelligence and law enforcement purposes.  The FBI withheld the following categories of information:

1.    <u>Law enforcement techniques for a national security investigation.</u>    The FBI withheld non-public investigative techniques that also qualify for protection under Exemptions 1 and 3, as they are also intelligence sources and methods for national security investigations.  Seidel Decl. ¶ 97.

2.    <u>Investigative techniques and procedures for confidential human sources.</u>  The FBI withheld information regarding strategies for utilization of a confidential human source and confidential human source reporting documents.  Seidel Decl. ¶ 98.  The FBI's manner of utilizing confidential human sources is undoubtedly an investigative technique, and revealing strategies for their use would allow criminals and adversaries to "modify their behavior in a manner which avoids detection."  *Id*. ¶ 100.  As such, this information is protected under Exemption 7(E).  *See Elec. Frontier Found. v. Dep't of Just*., 384 F. Supp. 3d 1, 14 (D.D.C. 2019) (concluding that the FBI could invoke Exemption 7(E) to protect "procedures of its informant program").

3.    <u>Investigative file numbers.</u>    The FBI withheld file numbers because the "file numbering convention" identifies the type of investigation involved.  Seidel Decl. ¶¶ 102-105. Courts have found file numbers to be protected under Exemption 7(E).  *See, e.g., Shapiro v. Dep't of Just*., 78 F. Supp. 3d 508, 520 (D.D.C. 2015) (concluding that case file numbers are exempt).

4.    <u>Markings that would identify the FBI units involved in the Young investigation.</u> Markings identifying the involved units and squads are found on various documents, often in the headings of internal FBI documents.  Seidel Decl. ¶ 106.  Disclosure of this information would provide an indication of the geographic locations or areas of investigative interest or expertise, which if known could be used to circumvent the locations or the use of that expertise.  *Id*.  Courts have found unit identifiers to be protected under Exemption 7(E).  *See, e.g., Shapiro v. Dep't of Just*., 393 F. Supp. 3d 111, 118 (D.D.C. 2019) (concluding that "knowledge of a unit name that features an investigative technique – particularly one that is unknown and revealed in conjunction

with the specific location in which it is employed – could equip potential criminals with information needed to evade detection").

### F.   The Records Could Not Be Reasonably Segregated

Under FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information must be disclosed after redaction of the exempt information, 5 U.S.C. § 552(b), unless the non-exempt portions are "inextricably intertwined with exempt portions" of the record. *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578–79 (D.C. Cir. 1996); *Canning v. Dep't of Just.*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Here, the FBI reviewed and considered on a "document-by-document basis" whether any non-exempt information was reasonably segregable. Seidel Decl. ¶¶ 57-58, 108-09. The FBI determined that, to the extent there was any non-exempt information in records, that information was inextricably intertwined with exempt information such that only "meaningless, disjointed words or phrases, devoid of any informational content" or perhaps the "headings" of documents or standard forms would end up being released. *Id.* ¶¶ 108-09.

The FBI's determination that all responsive "Mo" records are not reasonably segregable is consistent with determinations made in cases involving similar types of records. For example, the Court in *Miller v. Department of Justice*, 872 F. Supp. 2d 12, 27-28 (D.D.C. 2012), agreed that Exemption 7(D) protected all information obtained from the confidential source and accordingly

concluded that the FBI record could be withheld in its entirety. Withholding records in their entirety allows the FBI "to uphold its obligations to CHS "Mo" and the integrity of [the FBI's] entire CHS program." Seidel Decl. ¶ 108. Similarly, given the robust protection afforded classified documents and intelligence sources and methods under Exemptions 1 and 3, respectively, and the risk to national security that would follow disclosure, courts recognize that records covered by those exemptions may be withheld in their entirety. *See Elec. Priv. Info. Ctr. v. Off. of Dir. of Nat'l Intel*., 281 F. Supp. 3d 203, 215 (D.D.C. 2017) ("ODNI has met its burden of demonstrating that the entire report falls within Exemptions 1 and 3, and that there are no portions of the report that can be safely released, including information about its length, without jeopardizing our national security."); *Inst. for Pol'y Stud. v. CIA*, 885 F. Supp. 2d 120, 145 (D.D.C. 2012) (concluding that document "classified at the secret level and [which] contains intelligence sources and methods" could be withheld in its entirety); *ACLU v. CIA*, 109 F. Supp. 3d 220, 244 (D.D.C. 2015) (classified records relating to drone strikes are not reasonably segregable).

## CONCLUSION

For the above reasons, the FBI respectfully requests that the Court grant its motion for summary judgment.

Dated: June 15, 2022          Respectfully submitted,

                              MATTHEW M. GRAVES, D.C. Bar No. 481052
                              United States Attorney

                              BRIAN P. HUDAK
                              Chief, Civil Division

                               */s/ Sean Tepe*
                              SEAN M. TEPE, D.C. Bar #1001323
                              Assistant United States Attorney
                              601 D Street, NW
                              Washington, DC 20530
                              202-252-2533