UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NICHOLAS E. YOUNG,

             Plaintiff,

    v.

DEPARTMENT OF JUSTICE,

             Defendant.

Civil Action No. 21-739 (DLF)

**REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

      Defendant Department of Justice and its relevant component agency, the Federal Bureau of Investigation ("FBI"), respectfully submits this reply in support of its motion for summary judgment ("Motion"; ECF No. 22).

      The only portion of Plaintiff's eight-part April 28, 2021, Freedom of Information Act ("FOIA") request still at issue is part or item six, which seeks:

> Anything that reveals (i) the number of consensual audio recordings of Mr. Young made by CHS "Mo," (ii) whether any of those recordings were destroyed, misplaced, lost, or otherwise withheld from production to Mr. Young, (iii) any "validation reports" or CHS file concerning "Mo,"; and (iv) whether any information was withheld from, or not placed in, the validation report for "Mo."

Although at least certain subparts of item six appear to be questions disguised as a request for records, the FBI construed the request liberally as seeking any records touching on these subjects as they pertain to the FBI's counterterrorism and criminal investigation of Plaintiff. Consistent with that liberal construction, the FBI searched for all records "relating to [confidential human source] (CHS) 'Mo'" in the FBI's investigative file for Plaintiff. Second Declaration of Michael G. Seidel ("2d Seidel Decl.") ¶ 7. Not surprisingly, given that item six seeks records relating to a confidential human source used in the FBI's investigatory activities prior to Plaintiff's prosecution

and conviction for providing material support to the Islamic State of Iraq and al-Sham ("ISIS") and obstruction of justice, a number of FOIA exemptions protect responsive records from disclosure. The Declaration of Michael G. Seidel (ECF No. 22-2) provides a comprehensive explanation for how these records are exempt from disclosure pursuant to FOIA Exemptions 1, 3, 6, 7(C), 7(D), and 7(E).

Given the nature of the requests and the "Mo"-related records identified, Plaintiff would have difficulty in challenging the application of the cited FOIA exemptions. Thus, for most exemptions, Plaintiff's Opposition (ECF No. 24) does not even attempt to demonstrate their inapplicability. Instead, Plaintiff argues a red herring, asserting that because the "Seidel Declaration does not answer" the questions posed by item 6 of the FOIA request the Court should deny summary judgment and order that the FBI "conduct a proper search." Opp. at 10. Yet the mere fact that the Seidel Declaration did not answer the questions embedded in item 6 does not mean that the FBI failed to properly search for records or claim FOIA exemptions.

## ARGUMENT

### I.    The FBI Conducted Adequate Search for Responsive Records

Although the parties agreed that summary judgement would be limited to the FOIA exemptions asserted by the FBI, Plaintiff now raises concerns with regard to the FBI's search as described in the first Seidel Declaration. The search, however, was adequate because the FBI "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Reporters Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (quoting *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

In the Opposition, Plaintiff makes the surprising assertion that he suspects the FBI "completely failed to properly process Young's FOIA request with respect to line item 6," which has four subparts all concerning records relating to the confidential human source referred to as

"Mo." Opp. at 9. Plaintiff complains that the FBI searched for all records relating to "Mo" in Plaintiff's investigative file instead of searching more narrowly to target only the subparts of item 6. *Id*. It is not often that a FOIA requester criticizes an agency for searching too broadly, but nonetheless, Plaintiff's criticism is misplaced.

Item 6 of the FOIA request is framed as seeking records that "reveal" information responsive to certain questions, such as how many audio recordings were made and whether recordings were misplaced, lost, or withheld. The surest way to locate such records would be to search for all records relating to "Mo" in the investigative file. Stated differently, by identifying all "Mo"-related records, the FBI would not miss any records that "reveal" such information about the "Mo" audio recordings. Plaintiff presents no legal authority to suggest that searching more broadly to ensure all responsive documents are located is inconsistent with an agency's FOIA obligation. *See generally* Opp. On the contrary, it is a "search method [that] was reasonably calculated to uncover all relevant documents." *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Indeed, it is common for an agency to conduct an overinclusive search that yields potentially responsive records that gets narrowed upon further responsiveness review. If anything, the FBI simply fulfilled its "duty to construe a FOIA request liberally." *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995).

Plaintiff also questions the adequacy of the search because the Seidel Declaration did not identify "specific records that are actually responsive to the request" when discussing the categories of exempt material. Opp. at 7. Of course, the FBI could not withhold as exempt records that were not located, and for the sake of clarity, the FBI searched through the investigative file for any mention of destruction, misplaced, or lost "Mo" audio recordings and for any "validation reports" or a CHS file concerning "Mo" and whether any information was withheld from, or not placed in, a validation report for "Mo." 2d Seidel Decl. 7. That search yielded no responsive

records. *Id*. The fact that the FBI did not locate records responsive to certain subparts of item 6 does not diminish the adequacy of the search, because the law in this Circuit is that "the adequacy of a search is 'determined not by the fruits of the search, but by the appropriateness of [its] methods.'" *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013) (quoting *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)).

Most importantly, Plaintiff does not challenge any aspect of the search methodology described in the Seidel Declaration (*see* Seidel Decl. ¶¶ 38-52). *See generally* Opp. In fact, Plaintiff's criticisms are not about the search methodology employed by the FBI but instead about the fact that the FBI through the Seidel Declaration has not answered the questions Plaintiff embedded in item 6 of his FOIA request. Plaintiff admits as much when he argues that there are "questions that were lawfully required to be address[ed] as part of [responding to] Young's FOIA request." Opp. at 10. Plaintiff is incorrect. The FOIA does not require agencies to conduct research by "answer[ing] questions disguised as a FOIA request." *See, e.g., Nat'l Sec. Couns. v. CIA*, 898 F. Supp. 2d 233, 269 (D.D.C. 2012) (citing cases).

Finally, Plaintiff questions why the FBI conducted its search within Plaintiff's investigative file, Opp. at 9, but that is the location most likely to contain material responsive to Plaintiff's FOIA request. 2d Seidel Decl.¶ 6. Item 6 seeks records relating to the use of a confidential human source in a counterterrorism and criminal investigation of Plaintiff, and specifically records related to audio recordings involving Plaintiff and the source and "validation" reports regarding that confidential source used in the investigation of Plaintiff. *Id*. Accordingly, the FBI determined that the investigative file is the location most likely to contain responsive materials regarding the use of this confidential source in the investigation of Plaintiff. *Id*. Courts hold that an agency "need not search files or record systems that are not 'likely to contain responsive materials.'" *Cause of Action Inst. v. IRS*, 316 F. Supp. 3d 99, 110 (D.D.C. 2018) (quoting *Oglesby*, 920 F.2d at 68).

4

Further, neither Plaintiff's FOIA request nor Plaintiff's Opposition identified an alternative location to search. *See, e.g., Am. Oversight v. Dep't of Just.*, 401 F. Supp. 3d 16, 30 (D.D.C. 2019) ("[T]he agency is in the best position to determine custodians most likely to have relevant records.") (citations and quotations omitted); *Ramstack v. Dep't of Army*, 607 F. Supp. 2d 94, 108 (D.D.C. 2009) ("Because the plaintiff did not specify particular databases to be searched, the defendants' searches were sufficient.").

In sum, Plaintiff has not identified any deficiencies in the actual methodology employed by the FBI to search for records relating to CHS "Mo" in Plaintiff's investigative file.

## II. The Requested Records Are Exempt From Disclosure

### A. Exemption 7(D)

There is no genuine dispute that the records requested by Plaintiff in item 6 or located by the FBI in its search for records responsive to item 6 are exempt under 5 U.S.C. § 552(b)(7)(D). Exemption 7(D) prevents disclosure of records "compiled by criminal law enforcement authorit[ies] in the course of a criminal investigation" if producing the records "could reasonably be expected to disclose the identity of a confidential source" or "information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). Plaintiff does not dispute that the first part of the exemption is satisfied by acknowledging that the information provided by "Mo" was compiled by the FBI during its investigation of Plaintiff with an understanding of confidentiality. Opp. at 11; *see also* Seidel Decl. ¶¶ 56, 59.

But Plaintiff attempts to dispute the second part of Section 552(b)(7)(D) by claiming that at least some of the item 6 subparts did not call for the disclosure of the identity of or information furnished by the confidential source. Specifically, Plaintiff argues that his request "did not seek records identifying 'Mo,' or the audio recordings or other actual evidence 'Mo' provided regarding Young." Opp. at 11. But that is plainly not so. In subpart (iii), the FOIA request seeks "any validation reports or CHS file concerning 'Mo.'" It is not credible to contend that this request does

not seek records that would identify "Mo" or any evidence he provided. Seidel Decl. ¶ 55. Similarly, in subpart (i), the FOIA request asks for "anything that reveals" the number of consensual audio recordings of Plaintiff. Logically, for example, the audio recordings themselves are records that "reveal" the number of recordings, and the audio recordings would reveal the identity of "Mo" and the contents of information furnished by "Mo." Perhaps Plaintiff's argument would be on firmer ground if the FOIA request asked for "anything that reveals" the number of audio recordings excluding the recordings themselves and any record that would have the effect of disclosing the identity of or the information supplied by "Mo." But that is not what the request states, and agencies are "bound to read [FOIA requests] as drafted" and "not as . . . [Plaintiff] might wish it was drafted." *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984).

Regardless of Plaintiff's belated efforts to revise the terms of his FOIA request, Exemption 7(D) applies to "records or information . . . to the extent production . . . could reasonably be expected to disclose the identity of a confidential source" or "information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). The FBI identified categories of documents to the extent that they contain information that directly or indirectly identifies the confidential human source or discloses information furnished by the source: CHS reporting documents, interview forms (FD-302s), FBI electronic communications ("ECs"), and other administrative investigation documents. Seidel Decl. ¶ 59.[1] If Plaintiff wants to argue that these documents are not responsive to his FOIA request, he may; but he has not shown that they are not protected by Exemption 7(D). And "that ends the matter," as the D.C. Circuit has stated. *Roth v. Dep't of Just.*, 642 F.3d 1161, 1184-85 (D.C. Cir. 2011) ("If the FBI's production of criminal investigative records 'could reasonably be expected to disclose the identity of a confidential source' or

---

[1] The Second Seidel Declaration clarifies that the audio recordings were included in the "CHS reporting documents" category. 2d Seidel Decl. ¶ 7.

6

'information furnished by' such a source, that ends the matter, and the FBI is entitled to withhold the records under Exemption 7(D).").

Further, the applicability of Exemption 7(D) does not depend on whether the Seidel Declaration answers Plaintiff's questions regarding "the number of audio recordings, whether any recordings were lost, and if any information was withheld from the validation reports." Opp. at 13, 16. Rather, it depends on the statutory criteria in Section 552(b)(7)(D), which Plaintiff admits is satisfied in part (*e.g.*, compiled for law enforcement under agreement of confidentiality) and is not credibly disputed in part (*e.g.*, could reasonably be expected to disclose the identity of or information furnished by a confidential source). Just as there is no obligation to answer questions disguised as a FOIA request, there is no obligation to provide a declaration that answers those same questions. The Seidel Declaration appropriately identified the categories of records relating to CHS "Mo" that were located and explained the basis for withholding under Exemption 7(D). Seidel Decl. ¶¶ 54-60; 2d Seidel Decl. ¶ 8. Nothing more is required.

Finally, Plaintiff makes a half-hearted argument that perhaps there is a waiver of Exemption 7(D) protections. Plaintiff suggests that unidentified trial testimony of "Mo" and unidentified "official disclosures by [the] FBI, warrants consideration of whether the Government has waived the confidentiality protection of Exemption 7(D)" with respect to the "existence" of audio recordings. Opp. at 12. Yet Plaintiff acknowledges that the D.C. Circuit's decision in *Parker v. Department of Justice*, 934 F.2d 375 (D.C. Cir. 1991), rejects Plaintiff's waiver argument.[2] In *Parker*, the D.C. Circuit discussed the reasons "why the concept of 'waiver' does

---

[2] The case law cited by Plaintiff does not assist his argument. For example, in *Shem-Tov v. Department of Justice*, 531 F. Supp. 3d 102, 116 n.6 (D.D.C. 2021), the court speculated in dicta that "[c]onfidentiality pursuant to Exemption 7(D) might not apply, for example, if a source unambiguously waives the right to confidentiality" but then allowed "even in such exceptional cases, the D.C. Circuit has suggested that underlying information furnished by the source remains protected."

not apply to the FOIA Exemption (7)(D)" and ruled that even when a confidential source testifies in open court, the Government is still able to invoke Exemption 7(D) to withhold source identities and the information they provided. *Id*. at 380-82. Plaintiff vaguely argues that "'Mo' testified to the very information sought by Young's FOIA request" but Plaintiff does not provide this Court with the actual testimony or tie that testimony to a specific FOIA request or withheld record. *See Davis v. Dep't of Just.*, 968 F.2d 1276, 1281 (D.C. Cir. 1992) (ruling "the government is entitled to withhold the tapes obtained through the informant's assistance unless it is specifically shown that those tapes, or portions of them, were played during the informant's testimony").

The "Mo"-related records requested and categorically identified are plainly protected by Exemption 7(D).

### B.     Other Exemptions

Plaintiff acknowledges that the FBI withheld "Mo" related records pursuant to Exemptions 1, 3, 6, 7(C) and 7(E) and explained the basis for those withholdings in the Seidel Declaration and its Motion. Opp. at 15-16. Plaintiff, however, has chosen not to address any of those explanations or legal arguments. Accordingly, the Court may properly treat the FBI's Motion with respect to those exemptions as conceded. *See, e.g., Kone v. District of Columbia*, 808 F. Supp. 2d 80, 83 (D.D.C. 2011) ("[A]n argument in a dispositive motion that the opponent fails to address in an opposition may be deemed conceded.").

Plaintiff argues that there is a disconnect between the records described in the Seidel Declaration and the terms of the FOIA request and suggests this constitutes some form of deficiency. Opp. at 16. Not so. The Seidel Declaration provided categorical descriptions of the "Mo" related records located by the FBI and explained the basis for the relevant exemptions. *See Morley v. CIA*, 508 F.3d 1108, 1126 (D.C. Cir. 2007) (noting "the special deference owed to agency affidavits on national security matters"). Plaintiff could have argued that these categories

of "Mo"-related records are not subject to the cited exemptions, but Plaintiff chose not to, and the Court may treat the FBI's arguments with respect to those exemptions as conceded. Further, certain requested records were not found in the FBI's search, such as records that "reveal" the destruction, loss, or withholding of audio recordings or validation reports for "Mo." 2d Seidel Decl. ¶ 7. Thus, one would not expect the Seidel Declaration to discuss these records in a section regarding records located but withheld pursuant to a FOIA exemption.

## CONCLUSION

For the above reasons, the FBI respectfully requests that the Court grant its motion for summary judgment.

Dated: October 17, 2022            Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

 /s/ Sean Tepe
SEAN M. TEPE, D.C. Bar #1001323
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
202-252-2533