### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

NICHOLAS E. YOUNG,

        *Plaintiff*,

    v.                                  No. 21-cv-739 (DLF)

U.S. DEPARTMENT OF JUSTICE,

        *Defendant*.

### <u>MEMORANDUM OPINION</u>

Nicholas Young brings this suit against the Department of Justice under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Before the Court is the defendant's Motion for Summary Judgment, Dkt. 22. For the reasons that follow, the Court will grant the motion.

## I.   BACKGROUND

On December 18, 2017, Young was convicted of attempting to provide material support to the Islamic State of Iraq and al-Sham (ISIS) and attempted obstruction of justice, for which he was sentenced to 15 years in prison. *United States v. Young*, No. 16-cr-265 (E.D. Va.), Dkts. 196, 224. On January 3, 2021, Young submitted a FOIA request to the FBI for records concerning a confidential human source (CHS) referred to as "Mo," who publicly testified against Young at his criminal trial. Seidel Decl. ¶ 6 & Ex. A, Dkt. 22-2. At issue here is line item 6 of the FOIA request, which sought disclosure of any and all FBI records revealing "(i) the number of consensual audio recordings of [] Young made by CHS 'Mo,' (ii) whether any of those recordings were destroyed, misplaced, lost, or otherwise withheld from production to [] Young, (iii) any

'validation reports' or CHS file concerning 'Mo,'[] and (iv) whether any information was withheld from, or not placed in, the validation report for 'Mo.'"  *Id.* Ex. E.[1]

In response, the FBI conducted a search using the phrase "Nicholas Young" and limited the scope to acknowledged records regarding "Mo."  *Id.* ¶ 51.  On December 3, 2021, the FBI sent a letter to Young informing him that records responsive to his request were categorically denied pursuant to FOIA Exemptions 6, 7(C), and 7(D).  *Id.* ¶ 20 & Ex. M.

Young brought this suit against DOJ on March 20, 2021, and amended his complaint on July 12, 2021, after exhausting his administrative remedies.  Complaint, Dkt. 1; First Amended Complaint, Dkt. 11-3.  On June 15, 2022, DOJ moved for summary judgment, arguing that the FBI conducted a proper search and is justified in withholding records pursuant to FOIA Exemptions 1, 3, 6, 7(C), 7(D), and 7(E).  *See* Def.'s Mot. for Summ. J., Dkt. 22. Young contends that the FBI did not adequately conduct a search for records responsive to his request in line item 6 and that the FBI's declaration does not sufficiently justify withholding relevant records pursuant to the asserted FOIA Exemptions.  *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J., Dkt. 24.

## II.    LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Materiality is, of course, a function of the applicable legal standard, which in this case is that an agency responding to a FOIA request must conduct a search reasonably calculated to uncover all relevant documents, and, if challenged, must demonstrate beyond material doubt that the search was reasonable."

---

[1] In his opposition brief, Young conceded all arguments related to line item 7, narrowing the dispute to line item 6 alone.  *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 1, Dkt. 24.

*Kowalczyk v. DOJ*, 73 F.3d 386, 388 (D.C. Cir. 1996) (cleaned up).  All facts and inferences must be viewed in the light most favorable to the requester, and the agency bears the burden of showing that it complied with FOIA.  *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

To prevail under Rule 56, a federal agency "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from [FOIA's] inspection requirements."  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam) (citation omitted).  "The system of disclosure established by the FOIA is simple in theory.  A federal agency must disclose agency records unless they may be withheld pursuant to one of the nine enumerated exemptions listed in [5 U.S.C.] § 552(b)."  *DOJ v. Julian*, 486 U.S. 1, 8 (1988). "The peculiarities inherent in FOIA litigation, with the responding agencies often in sole possession of requested records and with information searches conducted only by agency personnel, have led federal courts to rely on government affidavits to determine whether the statutory obligations of [FOIA] have been met."  *Perry*, 684 F.2d at 126.  Agency affidavits are entitled to a presumption of good faith, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and "[s]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith," *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (alteration in original and citation omitted).  It is well established that "the vast majority of FOIA cases can be resolved on summary judgment."  *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

### III.    ANALYSIS

#### A.    Adequacy of Search

The Court first concludes that the FBI's search for all records with the term "Nicholas Young" related to "Mo" in Young's file was reasonably calculated to turn up records responsive to Young's request, including records regarding the recordings "Mo" made of Young and anything that may have happened to them.  At the summary judgment stage in a FOIA suit, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate."  *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis omitted).  In general, the adequacy of a search "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case."  *Id.* "The agency has the initial burden to demonstrate the adequacy of its search, which it may meet by providing declarations or affidavits that are relatively detailed, nonconclusory and submitted in good faith."  *Landmark Legal Found. v. EPA*, 959 F. Supp. 2d 175, 181 (D.D.C. 2013) (cleaned up).  A search is adequate if it uses "methods which can be reasonably expected to produce the information requested."  *Reporters Comm. for Freedom of the Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (citation omitted).

Here, the FBI submitted a declaration from Michael Seidel that describes its search in reasonable detail because it includes the search terms and parameters used and provides reasoning for them.  A "reasonably detailed affidavit" sets forth "the search terms and the type of search performed" and states that "all files likely to contain responsive materials (if such records exist) were searched."  *Oglesby v U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  The affidavit here explains in detail the method of its search of the FBI's Central Records System, as well as the term ("Nicholas Young") and search refinement (records regarding "Mo") relied on.  Seidel Decl.

¶ 51. After the search, the FBI found "no indication from the information located" that "responsive material would reside in any other FBI system or location." *Id.* ¶ 52. Through these sworn statements, the FBI has met its burden to provide a reasonably detailed affidavit to defend the adequacy of its search for records pursuant to Young's FOIA request in line item 6.

Young's arguments to the contrary are unpersuasive. First, the fact that the FBI purportedly used unduly broad search terms is not an indication of an inadequate search. To be sure, a *failure* to use broad search terms can be a reason to dispute whether a search was adequate, *see Bader Family Found. v. U.S. Dep't of Educ.*, No. 21-cv-1741, 2022 WL 4355259, at *3 (D.D.C. Sept. 20, 2022); *Am. Oversight v. OMB*, No. 18-cv-2424, 2020 WL 1536186, at *4 (D.D.C. Mar. 31, 2020). But broad, overinclusive search terms would not limit the responsive records produced by the agency; indeed, they would only generate more of them. That an agency produced too many records in its initial searches is thus not in and of itself a reason to deny summary judgment.

Second, the Court is unconvinced that the FBI unduly narrowed its search to Young's investigative file. The court gives deference to the agency as being "in the best position to determine custodians most likely to have relevant records." *Am. Oversight v. DOJ*, 401 F. Supp. 3d 16, 30 (D.D.C. 2019) (citation omitted). The FBI's determination that any documents referencing the recordings between Young and "Mo" would most likely be found in Young's file and would be found by a search for "Mo" is sensible because the information requested relates to Young's criminal prosecution. *See* Second Seidel Decl. ¶ 6, Dkt. 27-1 ("Plaintiff asked specifically for records regarding the use of 'Mo' as a confidential informant in the investigation of Plaintiff, and therefore, there is no other agency file or location that would reasonably be expected to store records regarding the use of 'Mo' in the investigation of Plaintiff."). Young provides no persuasive reason to conclude otherwise.

Third, that the search yielded no records responsive to the second through fourth requests of line item 6 also does not diminish the adequacy of the search.  Adequacy is not determined by the "fruits of the search."  *Hodge v. FBI*, 703 F.3d 575, 579 (D.C. Cir. 2013) (citation omitted).  Rather, for a search to be adequate, it must merely be reasonably calculated to produce the materials requested if they exist.  *Oglesby*, 920 F.2d at 68.  The FBI clarified in a supplemental declaration that no records were presented concerning these requests because no such records were found in the search.  *See* Second Seidel Decl. ¶ 7.  Because the FBI conducted the search with reasonable terms and listed all relevant records, it fulfilled its responsibility.  There is no additional obligation to "answer" any questions that may be underlying the FOIA request.  *See Nat'l Sec. Couns. v. CIA*, 898 F. Supp. 2d 233, 269 (D.D.C. 2012) (explaining that FOIA neither imposes a "duty on the agency to create records" nor requires the agency to "answer[] questions disguised as a FOIA request") (citations omitted).  The Seidel Declaration describes the responsive records found, and the court gives deference to the agency's good-faith judgment of which records from its search are ultimately responsive.  *SafeCard Servs.*, 926 F.2d at 1200.

## B.  Exemption 7(D)

The Court also concludes that the FBI was justified in withholding records found in its search under Exemption 7(D) because, as Young concedes, *see* Opp'n at 11, "Mo" was a confidential source providing information with the understanding of complete confidentiality.

"Where, as here, the records at issue were 'compiled by criminal law enforcement authorit[ies] in the course of a criminal investigation,' they are covered by Exemption 7(D) if producing the records 'could reasonably be expected to disclose the identity of a confidential source' or 'information furnished' by such a source."  *Roth v. DOJ*, 642 F.3d 1161, 1184 (D.C. Cir. 2011) (alteration in original and quoting 5 U.S.C. § 552(b)(7)(D)).  Further, "[i]f the FBI's

production of criminal investigative records 'could reasonably be expected to disclose the identity of a confidential source' or 'information furnished by' such a source, that ends the matter, and the FBI is entitled to withhold the records under Exemption 7(D)." *Id* at 1184–85 (quoting 5 U.S.C. § 552(b)(7)(D)).

Young's arguments that the types of responsive records described by the FBI either would not reveal the identity of "Mo" or are not relevant to his request are unconvincing. The FBI provided a descriptive list of types of documents revealed in its search that it withheld as reasonably expected to identify "Mo," including CHS reporting documents, interview forms, FBI electronic communications, and administrative investigation documents. *See* Seidel Decl. ¶ 59. Young contends that the records he requests would not disclose the identity of "Mo," but the agency with access to the documents is in the best position to make that determination. The FBI met its burden to provide a sufficiently detailed justification for withholding these records. *See Judicial Watch*, 726 F.3d at 215 (explaining that agencies satisfy their burden if affidavits include "reasonable specificity of detail"). The same is true with respect to the FBI's determination that non-exempt records could not be segregated from exempt ones. In general, when a FOIA requester "seeks a mixture of exempt and non-exempt records . . . an agency must segregate the non-exempt information from the exempt information, disclosing the former but not the latter." *Elec. Privacy Info. Ctr. v. IRS*, 910 F.3d 1232, 1237 (D.C. Cir. 2018). If, however, an agency adequately describes its segregability analysis and justifies its withholdings, "a district court need not conduct its own in camera search for segregable non-exempt information unless the agency response is vague, its claims too sweeping, or there is a reason to suspect bad faith." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 262 (D.C. Cir. 1977); *see also Miller v. DOJ*, 872 F. Supp. 2d 12, 27 (D.D.C. 2012) ("[T]he Court will defer to an agency's good faith determination

regarding segregability.").   Here, the Seidel Declaration reasonably details that segregated disclosure would either "result in the release of meaningless, disjointed words or phrases" or otherwise "indicate the extent to which CHS 'Mo' cooperated with or provided information to the FBI."  Seidel Decl. ¶¶ 108–109; *see also id*. ¶ 58 ("Any non-exempt information is so inextricably intertwined with records related to CHS 'Mo' and/or information provided, that release of the non-exempt information would produce only incomplete sentences composed of isolated, meaningless words.").   Young has provided no argument to "overcome [the] presumption" that the agency complied with its segregability-related obligations.  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Finally, the fact that "Mo" publicly testified at trial does not change the analysis.  FOIA Exemption 7(D) allows the government to withhold confidential sources' identities and the information they provided even after those sources testify in court.  *See Parker v. DOJ*, 934 F.2d 375, 380–82 (D.C. Cir. 1991) (explaining that "the concept of 'waiver' does not apply to . . . FOIA Exemption 7(D)").   In his opposition, Young cursorily suggests that "Mo" "testified to the existence of the very information sought by Young's FOIA request," Opp'n at 13 n.3, but there is no basis for concluding that any particular record contains "the 'exact information' to which the source actually testified."  *Davis v. DOJ*, 968 F.2d 1276, 1281 (D.C. Cir. 1992) (citation omitted).

**CONCLUSION**

For the foregoing reasons, the Court grants the defendant's motion for summary judgment.[2]

A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

December 14, 2022

---

[2] Because the Court finds sufficient reason for withholding the documents under Exemption 7(D), it will not address the defendant's Exemption 1, 3, 6, 7(C), and 7(E) arguments.